# Exhibit A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| JOSEPH A. THOMAS, LTD<br>Plaintiff | : | |
| V. | : | C.A. No. 06-440ML<br><br>Jury Trial Demanded |
| RODMAN & COMPANY, INC.<br>Defendant | : | |

**AMENDED VERIFIED COMPLAINT**
**AND DEMAND FOR JURY TRIAL**

Plaintiff, Joseph A. Thomas, Ltd., hereby brings this action against defendant, Rodman & Company, Inc. ("Rodman"), for declaratory judgment, unfair competition, false designation of origin, and trade dress infringement. This is the second litigation between these two competitors in this court, the first having been commenced by Rodman against Thomas in December of 2000 and styled *Rodman & Company, Inc., et al. v. Joseph A. Thomas, Ltd.*, C.A. No. 00-611ML.

**Jurisdiction And Venue**

1. This Court has subject matter jurisdiction of this action under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1338 and 1367 and personal jurisdiction over Rodman due to its contacts with and within the State of Rhode Island.

2. Venue for this action is proper in this District pursuant to 28 U.S.C. §§ 1391.

**Parties**

3. Plaintiff, Joseph A. Thomas, Ltd. ("Thomas"), is a corporation organized and existing under the laws of the state of Rhode Island with a principal place of business located

at 24 Broadcommon Road, Bristol, Rhode Island.

4. Defendant, Rodman & Company, Inc. ("Rodman"), is a corporation organized and existing under the laws of the state of California. Roadman has conducted business in Rhode Island, commenced and maintained litigation against Thomas in this judicial district, and entered into a written settlement agreement terminating that litigation here in Rhode Island.

**Facts**
**Plaintiff and Its Product**

5. Thomas has, since approximately 1988, manufactured, imported, distributed and/or sold a line of quality hand tools, tool attachments, and related repair parts. Thomas markets and makes most of its sales at large, exposition-style trade shows held in cities throughout the United States. The tools sold by Thomas are purchased and utilized by craftsmen and by hobbyists in the manufacture, repair, and reconditioning of boats, in woodworking, construction and related sub-trades, and in automobile collision and damage repair. Over the years, Thomas has developed substantial goodwill in its name and in its products.

6. Since approximately 2000, Thomas has marketed and sold a hand-held, drill-powered cutting tool commonly referred to in the industry as a "nibbler." A nibbler tool, when attached to the drive of a common power drill, translates the rotary motion of the drill to cause a hardened steel "punch" or "die" to oscillate up and down at high speeds along the cutting edge of the nibbler tool. The nibbler can thereby be directed to "nibble" through sheet metal, plastic, wood veneer, and other such relatively flat, thin sheet material. Thomas sells its nibbler tool under the name "Bad Dog Biter."

7. The Thomas Bad Dog Biter is a two-headed nibbler that employs specific patented improvements over earlier nibbler tools including a freely rotatable nibbler head and the design of the nibbler mechanism that utilizes a single, pass-through punch that can be replaced periodically without having to disassemble the nibbler body. The Bad Dog Biter nibbler tool is manufactured in every way to be of the highest quality at an attractive price point.

8. Thomas has obtained two United States patents on its nibbler tool. Thomas is the owner of United States Pat. No. 7,047,613B2, covering a method of punch replacement in the two-headed nibbler device, and United States Pat. No. 7,171,754, covering an improved blade assembly for double-headed nibbler tools.

9. Thomas' Bad Dog Biter nibbler is packaged in a distinctive blue metal box with a customized yellow foam-rubber inner casing. The product itself has a metallic finished, stepped-cylindrical shaped body, dual black metal cutting heads, and a removable blue plastic handle-grip. It is packaged, displayed, and sold with a pass-through replacement punch and custom wrench placed in pre-cut depressions in the box's yellow foam-rubber insert. A true and accurate image of the Thomas Bad Dog Biter is shown below:




Thomas' Bad Dog Biter

10. Rodman has for several years been selling its own nibbler tool, which it calls the "Rodman Nibbler." The Rodman Nibbler has a single cutting head, a yellow stepped-cylindrical body, and is sold in a black metal tool box in a gray, sponge-like foam insert. True and accurate images of the Rodman Nibbler as sold by Rodman over the last several years is shown below:




The Rodman Nibbler

11. In December 2000, Rodman commenced litigation against Thomas in the United States District Court for the District of Rhode Island (*Patrick Lang and Rodman & Company, Inc. v. Joseph A. Thomas, Ltd.* C.A. No. 00-611ML ) alleging trade dress and patent infringement and other claims against Thomas concerning an earlier version of a nibbler tool sold by Thomas. Rodman claimed trade dress protection in, inter alia, the allegedly distinctive product coloring of the Rodman Nibbler, and also asserted that Thomas was unfairly competing against the Rodman Nibbler by marketing a nibbler which was almost identical in appearance to the Rodman Nibbler. Thomas filed counterclaims seeking damages and a nullification of the patent held by Rodman's nibbler supplier.

12. The parties negotiated and entered into a settlement agreement ("Settlement Agreement") prior to trial, with no restrictions placed on the nibbler tools as designed and

packaged that each party was importing and selling at the time, namely, the Rodman Nibbler and Thomas' Bad Dog Biter. However, the parties placed restrictions, obligations, and conditions on their actions going forward. Among other things, Thomas and Rodman agreed that Thomas would not sell nibblers in the United States utilizing the yellow body/black handle color configuration utilized by Rodman, but that limitation was conditional:

> 3.04 Thomas agrees not to sell in the United States a handheld, drill-powered nibbler utilizing the yellow body/black handle-grip color configuration currently used by Rodman until and unless either of the following two conditions occur: (1) six months from the date of this Agreement (the "Sell-Off Date"), Lang or Rodman have not ceased all sales of silver colored nibblers in the United States, or (2) at any time after the Sell-Off Date, Lang or Rodman sell nibblers in the United States employing any color combination other than the current yellow-body/black-handle color configuration.

(Settlement Agreement ¶3.04).

13. Thomas also agreed to maintain the structure and configuration of the cutting heads of all Bad Dog Biters to within general manufacturing tolerances found in Bad Dog Biter heads being sold at the time of the Settlement Agreement, but that limitation was also conditional:

> The limitations in this paragraph shall expire upon the expiration or earlier termination of United States Patent No. 4,748,744 (the "'744 Patent").

(Settlement Agreement ¶3.02).

14. Thomas has complied with all restrictions and obligations of the Settlement Agreement.

15. The parties thereafter continued to compete with one another with their respective nibbler tools and other tool products, often at trade shows around the United States.

16. Recently, upon information and belief sometime during 2006, Rodman began

importing and selling a nibbler tool that is significantly different from the Rodman Nibbler and essentially identical to the Bad Dog Biter.

17. As seen in the following side-by-side comparison depicting the first Rodman Nibbler (on the left) and the newly added nibbler sold by Rodman (on the right), Rodman has changed the color of the tool it is selling from yellow to metallic silver, changed the metal box housing the tool from black to blue, changed the formed interior packaging that holds the tool (and displays it at trade shows) from gray sponge-like foam to yellow, hard foam rubber, and is now including with the new nibbler it is selling (the "Rodman Nibbler II") right in the box a two-sided, pass-through punch and a wrench for adjusting the nibbler tool.



Rodman Nibbler Rodman Nibbler II

Unlike the first Rodman Nibbler, the Rodman Nibbler II is a "double headed nibbler," with two cutting heads mounted to the body; the plastic handle-grip is designed to fit over the cutting head that is not in use.

18. As seen in the following side-by-side comparison depicting Thomas' Bad Dog Biter on the left and the Rodman Nibbler II on the right, the recently sold Rodman Nibbler II

is substantially identical to Thomas' Bad Dog Biter, including the double-headed feature, the stepped cylindrical metallic silver body, the blue metal tool box, the yellow foam rubber insert, the slip-over plastic handle grip covering one of the two cutting heads, and the inclusion of an extra black steel cutting head, an extra two-headed, pass-through punch, and a hex wrench for adjustments right in the box:



Thomas' Bad Dog Biter Rodman Nibbler II

Additional side-by-side photos comparing Thomas' Bad Dog Biter with the Rodman II are attached hereto as Exhibit A.

19. The Rodman Nibbler II is packaged in a nearly identical blue metal box as Thomas' Nibbler, inside of which is the same type of custom-formed, foam inner casing.

20. The packaging of the Rodman Nibbler appears in almost every respect to be identical to the packaging of the JAT Nibbler right down to the size, shape, and construction of the metal box in which the product is sold, the custom lining inside the box, and the extra head, extra biter blade/punch, and wrench included therein.

21. The chief channel of trade for the Rodman Nibbler II is the same type of trade shows at which Thomas sells the Bad Dog Biter.

22. Defendant Rodman sells the Rodman Nibbler II at trade shows in the United States, including but not limited to trade shows at which Thomas leases space and sells its Bad Dog Biter.

23. Rodman has informed its customers at trade shows that The Rodman Nibbler II is "just like" the Bad Dog Biter, at times gesturing and referring customers to demonstrations of the Bad Dog Biter being carried out at Thomas' show booth nearby.

24. Rodman's supplier and the purported licensor of the original Rodman Nibbler to Rodman filed for patent protection of certain, limited technology contained in the device on June 17, 1986. That application ripened into U.S. Patent No. 4,748,744 (the "'744 Patent").

25. Rodman made reference to and attached a copy of the '744 Patent to its *Memorandum in Opposition to Plaintiff's Motion for Preliminary Injunction* filed in this litigation on November 1, 2006. Rodman maintains that both the Bad Dog Biter and the Rodman Nibbler II are composed of components "similar in mechanical function to Rodman's patented product, U.S. Patent Number 4,748,744." (*See* Rodman's *Memorandum in Opposition to Plaintiff's Motion for Preliminary Injunction*, at 6)

26. Counsel for Rodman has indicated that Dale Chesgreen, the President of Rodman, believes the Bad Dog Biter infringes the '744 Patent.

**<u>The Defendant's False Designation of Origin</u>**

27. Plaintiff repeats and re-alleges the allegations in the above paragraphs as though fully set forth herein.

28. Thomas marks all Bad Dog Biter nibblers it sells with a tag or label indicating that the product was manufactured in China.

29. Upon information and belief, The Rodman Nibbler II also originates from China, and is imported in substantially completed and assembled condition.

30. On or about July 15, 2006, employees of Thomas purchased a Rodman Nibbler II at the "EAA Airventure" show in Oshkosh, Wisconsin. True and accurate depictions of the Rodman Nibbler II purchased, along with the sales receipt, are attached to this Complaint as *Exhibit B*.

31. The Rodman Nibbler II purchased by Thomas did not contain any marking indicating that it was manufactured in China. Unlike Thomas' Bad Dog Biter, which is clearly labeled with its country of origin, the Rodman Nibbler II lacked any indication of its country of origin whatsoever.

32. On information and belief, Rodman sells the Rodman Nibbler II without any marking on the product or packaging identifying it as having been manufactured in China.

33. Therefore, upon information and belief, Rodman is importing a Chinese product, and either failing to properly label the products with their country of origin or removing the labeling which identifies the product's country of origin, thereby creating the false impression that the product is made in the United States.

34. On information and belief, Rodman is aware that the Tariff Act requires that each individual Rodman Nibbler be marked with its country of origin.

## COUNT I
## DECLARATORY JUDGMENT OF PATENT UNENFORCEABILITY AND NON-INFRINGMENT

35. Plaintiff repeats and re-alleges the allegations in the above paragraphs as

though fully set forth herein.

36. Rodman has claimed that Thomas' Bad Dog Biter infringes U.S. Patent Number 4,748,744.

37. The allegation of patent infringement creates reasonable apprehension on the part of Thomas of an infringement suit by Rodman.

38. An actual, present and justiciable controversy has arisen concerning Thomas' ability to market and sell its Bad Dog Biter, and Rodman's ability to enforce the '744 Patent.

39. Thomas seeks declaratory relief from this Court that the '744 Patent has expired and is unenforceable, and that Thomas' current sale and marketing of the Bad Dog Biter does not infringe the '744 Patent.

**COUNT II**
**DECLARATORY JUDGMENT OF FAILURE OF CONDITION CONTAINED IN SETTLEMENT AGREEMENT**

40. Plaintiff repeats and re-alleges the allegations in the above paragraphs as though fully set forth herein.

41. The Settlement Agreement restricted Thomas' ability to sell handheld, drill powered nibblers utilizing the yellow body/black handle color configuration utilized by Rodman and claimed as protectable trade dress, unless Rodman either failed to cease selling silver colored nibblers within six months of the agreement or if Rodman at any time thereafter sold nibblers in any color combination other than the yellow body/black handle configuration.

42. Since July, 2006, Rodman has marketed and sold a nibbler utilizing a metallic silver body.

43. Rodman's sale of the Rodman Nibbler II has eliminated the restriction on

Thomas' ability to sell handheld, drill powered nibblers utilizing the yellow body/black handle color configuration utilized by Rodman which the parties agreed to in the Settlement Agreement.

44. Given the prior litigation, terms of settlement, and recent conduct by Rodman and statements by Rodman by and through its counsel, an actual, present and justiciable controversy has arisen concerning Thomas ability to sell handheld, drill powered nibblers utilizing the yellow body/black handle color configuration previously claimed as protectable trade dress.

45. Thomas desires to sell nibblers utilizing a yellow body and black handle-grip color combination, and has taken steps to manufacture, import, and market said nibblers.

46. Thomas seeks declaratory relief from this Court that Rodman has sold nibblers in a color combination other than the yellow body/black handle configuration, that Rodman's sale of these nibblers has eliminated the restrictions contained in the Settlement Agreement on Thomas' conduct concerning the sales of nibblers, and that, pursuant to the terms of the Settlement Agreement, Thomas is permitted and authorized to market nibblers utilizing the yellow body/black handle color configuration utilized by Rodman.

## COUNT III
## VIOLATION OF LANHAM ACT § 43(a)
## FALSE DESIGNATION OF ORIGIN

47. Plaintiff repeats and re-alleges the allegations in the above paragraphs as though fully set forth herein.

48. On information and belief, the Rodman Nibbler II is manufactured in China, and not in the United States.

49. Defendant has failed properly to label the Rodman Nibbler II as having been

made in China, instead providing no country of origin on the product or its packaging, thereby creating an inference that the product is made in the United States, all in violation of the Tariff Act, 19 U.S.C. § 1304.

50. Such tacit misrepresentation as to the geographic origin of the Rodman Nibbler II is a violation of the Tariff Act and thus per se violation of Section 43(a) of the Lanham Act, 15 U.S.C. 1125(a).

51. By this conduct, plaintiff has suffered significant and irreparable harm, and that harm is ongoing.

**COUNT IV**
**VIOLATION OF THE LANHAM ACT § 43(a) – TRADE DRESS**

52. Plaintiff repeats and re-alleges the allegations in the above paragraphs as though fully set forth herein.

53. The design of Thomas' two-headed nibbler, with a metallic silver, stepped-cylindrical body, dual black metal cutting heads, and removable plastic handle-grip, is distinctive and non-functional trade dress belonging to Thomas. This trade dress is inherently distinctive or, through its long and continuous use, has acquired secondary meaning signifying Thomas as its source.

54. The display packaging of Thomas' nibbler, in yellow, pre-cut foam rubber cushioning along with one extra blade and one extra head, constitutes a distinctive non-functional trade dress for this product. This trade dress is inherently distinctive or, through its long and continuous use, has acquired secondary meaning signifying Thomas as its source. At trade shows where the Bad Dog Biter nibbler product is sold, Thomas regularly and routinely displays the nibbler in an open box with the aforesaid distinctive yellow, pre-cut foam rubber cushioning exposed.

55. Given the non-functional elements in plaintiff's use of color, packaging, and body, defendant's distribution of the Rodman Nibbler II featuring nearly identical colors, packaging, and body formation has caused and will continue to cause a likelihood of confusion among consumers of both Thomas' and Rodman's products.

56. Upon information and belief, defendant willfully and intentionally caused to be copied the distinct and well known coloring, body formation, and packaging of the Bad Dog Biter nibbler when directing the manufacture of the Rodman Nibbler II. At trade shows where the Rodman Nibbler II product is sold, Rodman displays the Rodman Nibbler II in an open box with the aforesaid distinctive yellow, pre-cut foam rubber cushioning exposed.

57. Rodman's willful and intentional efforts to trade off the goodwill associated with the Thomas nibbler, through use of a trade dress for its product which is nearly identical to that of Thomas' Bad Dog Biter, is a violation of the Lanham Act § 43(a).

58. While Thomas maintains that any one or more of the above examples would be evidence of intentional and willful trade dress infringement, taken together, Rodman's actions constitute willful and intentional efforts to trade off the trade dress and good will associated with Thomas and its product line. Rodman's actions constitute knowing, intentional, and willful trade dress infringement and a knowing, intentional, and willful violation of the Lanham Act § 43(a).

59. Rodman's willful and intentional acts have caused significant and irreparable harm to plaintiff, its business, goodwill, and reputation, which harm is ongoing, as well as irreparable and incalculable harm that must be enjoined by the Court.

## COUNT V
## VIOLATION OF COMMON LAW UNFAIR COMPETITION

60. Plaintiff repeats and re-alleges the allegations in the above paragraphs as though fully set forth herein.

61. The Rodman Nibbler II, as a result of its purposeful and almost identical appearance to Thomas' Bad Dog Biter nibbler and because of Rodman's false designation of the geographic origin of the Rodman Nibbler II, is likely to confuse and mislead the public generally to purchase the Rodman Nibbler II when their actual intention was to purchase the Bad Dog Biter nibbler or to purchase a product having the qualities and characteristics of the plaintiff's product.

62. Rodman's actions constitute willful and intentional unfair competition and have caused irreparable and incalculable harm to plaintiff, and that harm is ongoing.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that Judgment be entered in favor of Plaintiff and against Defendant, Rodman & Company, Inc., and that Plaintiff be granted the following relief:

A. Entry of judgment according to the declaratory relief sought: that U.S. Patent Number 4,748,744 has expired and is unenforceable; that the making, using, or selling of the Bad Dog Biter does not infringe U.S. Patent Number 4,748,744; Entry of judgment that Rodman has sold nibblers in a color combination other than the yellow body/black handle configuration; that Rodman's sale of Rodman Nibbler II nibblers has eliminated the restrictions placed on Thomas in the Settlement Agreement concerning trade dress; and that, pursuant to the terms of the Settlement Agreement, Thomas is permitted and authorized to market nibblers utilizing the yellow body/black handle color configuration previously claimed by Rodman;

B. Entry of judgment that Defendant is liable for infringement of the Plaintiff's distinctive trade dress in the Thomas nibbler and injunction and restraint of Rodman & Company, Inc., its officers, directors, agents, servants, employees, attorneys, successors, assigns, members, and all persons in active concert or participation with them, pursuant to 15 U.S.C. § 1116, from the manufacture, distribution, sale, or any other form of distribution of the Rodman Nibbler II using the distinctive colors, metal box, and/or body formation of the Thomas nibbler;

C. Entry of judgment that the Defendant is liable for false designation of geographic origin and injunction and restraint of Rodman & Company, Inc., its officers, directors, agents, servants, employees, attorneys, successors, assigns, members, and all persons in active concert or participation with them, pursuant to 15 U.S.C. § 1116, from the manufacture, distribution, sale, or any other form of distribution of the Rodman Nibbler II using labeling or other marketing techniques that actively or passively indicate that the Rodman Nibbler is made in the United States or anywhere else other than its true point of manufacture, China;

D. Injunction and restraint of Rodman & Company, Inc., its officers, directors, agents, servants, employees, attorneys, successors, assigns, members, and all persons, including but not limited to foreign corporations, in active concert or participation with them from further importation of the Rodman Nibbler II without marking of geographic origin in a manner compliant with 19 U.S.C. § 1304;

E. Within 30 days of the granting of preliminary injunction, Defendant be directed to send and make public in writing and in a fashion commensurate with the form of the distribution used to make their false representations a curative statement designed to

remedy its false statements regarding the origin of its nibbler to each individual to whom the Defendants have made such representations, and that this curative statement be first sent to and approved by Joseph A. Thomas, LTD.;

F. Pursuant to 15 U.S.C. § 1117 and the applicable common law, Defendants be required to account and pay over to Plaintiffs all profits from the sale of the Defendant's products and services, and all damages to Plaintiff which have resulted from Defendant's acts of unfair competition, and because of the willful and deliberate nature of the conduct by the Defendant, that this Court enter judgment for Plaintiff for three times the amount of the damages and profits assessed;

G. Plaintiff recover its costs herein;

H. Declare this case to be "exceptional" and award Plaintiff its reasonable attorneys' fees incurred as a consequence of Defendant's willful false designation of origin, use of trade dress, and other acts of unfair competition, as allowed by 15 U.S.C. § 1117(a);

I. Award pre-judgment and post-judgment interest on the damages caused by Defendant's conduct; and

J. Award Plaintiff such further relief as the Court deems just and proper.

**Jury Demand**

Plaintiff hereby demands a jury trial on all issues appropriately triable by a jury.

**Verification**

I, Joseph M. Strong, declare under penalty of perjury under the laws of the United States of America, that the foregoing is true and accurate based on my own personal knowledge or knowledge and information adduced by me as President of Joseph A. Thomas, LTD, or, where so indicated, that I believe such to be true.

______________________________
Joseph M. Strong, President
Joseph A. Thomas, LTD

Date: ______________

Date: February 13, 2007

JOSEPH A. THOMAS, LTD
By Its Counsel,

______________________________

Thomas R. Noel, Esq. (#4239)
John R. Harrington, Esq. (#7173)
NOEL & GYORGY LLP
50 South Main Street
Providence, RI 02903
(401) 272-7400
(401) 621-5688 (Facsimile)
TNoel@LawNoel.com