UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| JOSEPH A. THOMAS, LTD<br>Plaintiff | : | |
| V. | : | C.A. No. 06-440 ML |
| RODMAN & COMPANY, INC.<br>Defendant | : | |

**PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

The plaintiff, Joseph A. Thomas, LTD. ("Thomas"), hereby moves pursuant to Rule 37 of the Federal Rules of Civil Procedure for an *Order* requiring the defendant, Rodman & Company, Inc. ("Rodman"), to provide full and complete responses to the documents sought in Thomas' *First Request for Production of Documents* and to provide the documents themselves. The grounds for this Motion are set forth in the attached *Memorandum* and exhibits filed therewith.

Thomas requests a hearing on this *Motion*.

**Rule 37(a)(2)(A) Certification**

The undersigned certifies that he has in good faith attempted to confer with opposing counsel concerning the matters contained herein so as to avoid the necessity of court intervention, without success.

Date: April 30, 2007

JOSEPH A. THOMAS, LTD
By Its Counsel,

/s/ John R. Harrington
Thomas R. Noel, Esq. (#4239)
John R. Harrington, Esq. (#7173)
NOEL & GYORGY LLP
50 South Main Street
Providence, RI 02903
(401) 272-7400
(401) 621-5688 (Facsimile)
TNoel@LawNoel.com

## CERTIFICATE OF SERVICE

I do hereby certify that on the 30th day of April, 2007, a copy of this document was served by electronic means to Ronald P. Langlois, Esq., Smith & Brink, P.C., One State Street, Suite 400, Providence RI 02908.

/s/ John R. Harrington

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| JOSEPH A. THOMAS, LTD<br>Plaintiff | : | |
| V. | : | C.A. No. 06-440 ML |
| RODMAN & COMPANY, INC.<br>Defendant | : | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF IT'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

On January 5, 2007, the plaintiff, Joseph A. Thomas, LTD. ("Thomas"), served *Interrogatories* and *Requests for Production of Documents* on the defendant Rodman & Company, Inc. ("Rodman"). Thomas' initial discovery was focused on jurisdictional issues, in light of Rodman's pending motion to dismiss.

This *Motion* seeks an *Order* compelling responses to Document Request Nos. 2, 3, and 4.[1]

**REQUST 2:** All contracts, agreements, or similar documents concerning any agreement between Rodman and any employee, agent, distributor, reseller, independent contractor, or representative of Rodman, including but not limited to the "independent sales representatives" referred to in paragraph 6 of the Affidavit of Dale Chesgreen dated October 26, 2006, concerning the sale, marketing, or distribution of merchandise for Rodman, entered into or in effect at any time since January 1, 2000.

> **RESPONSE:** The Defendant objects to this request on the grounds that it seeks information which is irrelevant, immaterial, and not reasonably calculated in the discovery of admissible evidence as to whether Rodman engaged in sufficient business in Rhode Island for this Court to confirm personal jurisdiction. The Defendant further objects to this request on the grounds that it is beyond the scope of discovery permitted by this Court relative to the issue of jurisdiction presented in this matter.

[1] As required by Local Rule 37(a), each discovery request and the corresponding response is set forth below, followed by Plaintiff's argument as to why production of the documents should be ordered. Rodman's responses to Thomas' *First Request for Production of Documents* are attached as Exhibit A.

Rodman claims that, despite attending dozens of trade shows and exhibitions around the country each year and selling its products to hundreds or thousands of customers at these shows, its sales to and contacts with Rhode Island businesses and customers is insufficient for a finding of jurisdiction. The specific terms under which Rodman's employees, agents, distributors, resellers, independent contractors, or representatives operate, therefore, including listed markets and territories, exclusions thereof, instructions or prohibitions on their activities, and whether product is sold or consigned to them, among other things, may be highly relevant to the jurisdictional question. Thomas is entitled to examine all contracts and agreements between Rodman and any employee or agent in order to assess the extent of Rodman's control over individuals and entities marketing and selling Rodman products, including where and how they are sold.

There remain significant questions concerning Rodman and its business as it relates to the jurisdictional question. These questions are amplified by vague and contradictory statements contained in an Affidavit of Dale Chesgreen ("*Chesgreen Aff.*" - attached here as Exhibit B) submitted in support of Rodman's *Motion to Dismiss* and additional statements contained in Rodman's unsigned Answers to Interrogatories. Mr. Chesgreen, Rodman's president, states that Rodman "employs approximately 3 people" (*Chesgreen Aff.* ¶ 3), but thereafter states that Rodman sells its products "at trade shows and state fairs across the country through independent sales representatives." (*Chesgreen Aff.* ¶¶ 6,7) Rodman's website, a relevant page of which is attached to this *Memorandum* as *Exhibit C*, makes the claim that Rodman at one time "had a workforce of 13 sales representatives demonstrating [products] at over 400 trade shows a year." (*Exhibit C*,

Rodman Website) It is unclear whether the "workforce" referenced on the website is the same as the "independent sales representatives" described in the Chesgreen Affidavit.

In its Answers to Interrogatories, Rodman differentiates itself from its "agents" and its "independent sales representatives." In its Answer to Interrogatory No. 5, concerning whether Rodman, or any of its agents, distributors, resellers, independent contractors, or representatives, including the "independent sales representatives" have sold, displayed, or otherwise marketed Rodman products at trade shows in Rhode Island, Rodman qualifies its answer with the phrase "to the best of its knowledge." This qualification implies that Mr. Chesgreen's statements may not in fact speak for the activities of Rodman's "independent" representatives, or that Mr. Chesgreen is not in a position to know about the sales and distribution activities of its "independent" representatives. Mr. Chesgreen's reclassification of Rodman's "workforce" as "independent contractors" implies that Rodman has no control over their marketing efforts. If Rodman's "workforce" is in fact comprised of "independent representatives," there is significant question as to whether Rodman could control or even know of where these sales people were marketing and selling Rodman products.

Rodman's ambiguous statements and its apparent reluctance to provide documents necessary to clarify those statements, suggests that Rodman is attempting to shield and obfuscate the activities of the individuals and entities that are marketing and selling Rodman's products.

**REQUEST 3:** All documents, including but not limited to purchase orders, invoices, receipts, correspondence and customer lists, sufficient to identify the dates of sale, the products or components sold, and the names and addresses of all purchasers of any Rodman products or component parts for such products, whether made by Rodman or any employee, agent, distributor, reseller, independent contractor, or representative of

Rodman, including but not limited to the "independent sales representatives" referred to in paragraph 6 of the Affidavit of Dale Chesgreen dated October 26, 2006, to any person or entity residing in, located in, or having an office in the State of Rhode Island, at any time since January 1, 2000.

> **RESPONSE:** Please see attached invoice numbers 165752, 170895, 170874, and 170896.

This request seeks documents from January 1, 2000, and is central to the question of personal jurisdiction. Rodman produced four sales slips evidencing sales to Rhode Island residents. All those sales, however, occurred during a three-month period between October 2006 and January 2007. It is not likely that there were sales during the three months immediately preceding the Requests, but not before. The objective conclusion would be that Rodman confined its search – or its production – to only the handful of weeks immediately prior to the request. Sales of Rodman products to Rhode Island residents prior to October 2006 – not just after that time - are obviously relevant to the issue of jurisdiction.

**REQUEST 4:** All records of sales made by Rodman or any employee, agent, distributor, reseller, independent contractor, or representative of Rodman, including but not limited to the "independent sales representatives" referred to in paragraph 6 of the Affidavit of Dale Chesgreen dated October 26, 2006, at or arising from the Eastern States Exposition (commonly known as "The Big 'E'") in Massachusetts in 2006.

> **RESPONSE:** The Defendant objects to this request on the grounds that it seeks information which is irrelevant, immaterial, and not reasonably calculated in the discovery of admissible evidence as to whether Rodman engaged in sufficient business in Rhode Island for this Court to confirm personal jurisdiction. The Defendant further objects to this request on the grounds that it is beyond the scope of discovery permitted by this Court relative to the issue of jurisdiction presented in this matter.

Rodman has simply refused to produce sales records from the Eastern States Exposition (commonly known as "The Big 'E'"), a major exposition located in

Massachusetts that Rodman is known to have attended in the Fall of 2006. As the Court is aware, "a defendant need not be physically present in the forum state to cause injury (and thus 'activity' for jurisdictional purposes) in the forum state." *Northern Laminate Sales, Inc. v. Davis*, 403 F.3d 14, 25 (1st Cir. 2005). Thomas is entitled to examine the sales records from the 2006 "Big 'E'" to determine whether Rodman – or its employees, agents, distributors, resellers, independent contractors, or other representatives – sold product to Rhode Island residents or businesses and whether Rodman shipped product into Rhode Island. With the close proximity, notoriety, and regional appeal of that particular show, it is more than likely that some sales would have been made to Rhode Island customers.

By comparison, three of the four invoices produced (from the apparently limited search conducted by Rodman) in response to Document Request No. 3, evidence sales made to Rhode Island residents, *and product shipped into Rhode Island*, from a two-day period in which a trade show purportedly took place in Las Vegas, Nevada. It is highly probable that a higher number of sales and shipments of Rodman's products were made to Rhode Island residents from "The Big 'E'" - located just over the border from Rhode Island - as compared to a trade show located in Nevada. Rodman has challenged jurisdiction in Rhode Island. Thomas ought to be allowed to inspect sales records from a major trade show so close to the Rhode Island border.

WHEREFORE, the plaintiff Joseph A. Thomas, LTD., respectfully requests an Order from the Court that the defendant Rodman & Company, Inc., provide within twenty (20) days further responses to Thomas' *First Request for Production of Documents* as described in the above *Memorandum*.

Date: April 30, 2007

JOSEPH A. THOMAS, LTD
By Its Counsel,

/s/ John R. Harrington

Thomas R. Noel, Esq. (#4239)
John R. Harrington, Esq. (#7173)
NOEL & GYORGY LLP
50 South Main Street
Providence, RI 02903
(401) 272-7400
(401) 621-5688 (Facsimile)
TNoel@LawNoel.com

**CERTIFICATE OF SERVICE**

I do hereby certify that on the 30th day of April, 2007, a copy of this document was served by electronic means to Ronald P. Langlois, Esq., Smith & Brink, P.C., One State Street, Suite 400, Providence RI 02908.

/s/ John R. Harrington